IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE TOKOSHIMA, LUIS FLORES, and JAMES FABER, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE PEP BOYS - MANNY MOE & JACK OF CALIFORNIA, a California Corporation; THE PEP BOYS - MANNY MOE & JACK, a Pennsylvania Corporation; and DOES 1-10,<br><br>Defendants. | No. C-12-4810-CRB<br><br>**ORDER RE MOTION FOR CLASS CERTIFICATION & MOTION TO STRIKE** |

Plaintiffs Steve Tokoshima, Luis Flores, and James Faber brought this putative class action against The Pep Boys - Many Moe & Jack of California, The Pep Boys - Manny Moe and Jack, and Does 1-10 (collectively "Defendants"), alleging wage and hour violations and unfair business practices in connection with their previous employment with Defendants. Now before the Court are Plaintiffs' Motion for Class Certification (dkt. 37) and Defendants' Motion to Strike Declaration of Plaintiffs' Expert Witness (dkt. 50).[1] The Court GRANTS in part and DENIES in part Plaintiffs' Motion for Class Certification, and DENIES Defendants' Motion to Strike.

---

[1] In addition, both parties make unopposed Requests for Judicial Notice (dkts. 42, 49-6, 57). The Court GRANTS all three Requests. Documents that are included in the public records are appropriate for judicial notice, including "records and reports of administrative bodies." See Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001). Courts may also take judicial notice of the records of other courts, Wible v. Aetna Life Ins. Co., 375 F. Supp. 2d 956, 966 (C.D. Cal. 2005), and the legislative history of California statutes, Chaker v. Crogan, 428 F.3d 1215, 1223 & n.8 (9th Cir. 2005).

## I. BACKGROUND

Defendants sell automobile parts, accessories, tires, and batteries, and offer automotive repair and maintenance services. See Second Amended Complaint ("SAC") (dkt. 36) ¶ 13. Defendants operate over 130 stores in California. Id. Plaintiff Tokoshima worked as a Mechanic at Defendants' Union City and East San Jose stores from August 1996 to August 2011. See Mot. for Class Certification at 5. Plaintiff Faber worked as an Express Service Technician ("EST") at Defendants' Escondido store from July 2009 to May 2011. Id. Plaintiff Flores worked as a Commercial Sales Manager ("CSM") at Defendants' Fontana store from September 2010 to September 2011. Id.

### A. Defendants' Uniform Written Compensation Plans

Defendants' compensation plans, dictated by Pep Boys' corporate headquarters in Philadelphia, applied uniformly at Defendants' California stores since 2008, or 2009 for EST plans. See Mot. for Class Certification at 5. Local managers lacked any discretion to deviate from the plans. See Declaration of Rachel J. Zwillinger ("Zwillinger Decl.") (dkt. 41-1), Exh. 1 (Deposition of Edward Rojack, HR Manager, 125:22-126:5, 152:6-12, 155:17-23, 168:12-19). Plaintiffs challenge the compensation plans as they relate to three groups of employees: mechanics; ESTs; and CSMs. See Mot. for Class Certification at 5-8.

#### 1. Mechanics

Mechanics are compensated on a piece rate system under which they are paid a flat rate for each "labor hour" that the mechanic accrues. See Zwillinger Decl., Exh. 17 (mechanic compensation plan). The Pep Boys Labor Guide assigns a fixed number of "labor hours" to every service or repair task a mechanic performs. Id. These flat rate numbers are derived from the Mitchell Guide–which is used throughout the industry and provides standard time estimates for every specific service task based on the particular year, make, and model of the vehicle–and are intended to correspond to the actual amount of time a mechanic should require to complete a task. Id. at Exh. 1 (Rojack Depo., 49:4-14, 132:9-133:4). With each task, a mechanic accrues the number of labor hours assigned by the Labor Guide, regardless of how much time he actually spends on the task. See Mot. for Class Certification

2

at 6. During each work day, there is "non-productive time" in which mechanics do not accrue labor hours due to trainings, cleaning up their work area, waiting for parts, and waiting for new service orders to be processed. See Zwillinger Decl., Exh. 1 (Rojack Depo., 58:18-21). Mechanics are expected to maintain an 80-90% productivity level, defined by the percentage of flat rate hours compared to total on-the-clock hours ("clock hours"). Id. at 54:1-3; Exhs. 8, 9, 10, 11, 12 (mechanic job descriptions).

For each pay period, Pep Boys also calculates a "Variable Benefit Rate" ("VBR") for each mechanic, which involves a formula based on a rolling average of the mechanic's productivity over the past twelve weeks. Id., Exh. 17 at 2. Pep Boys multiplies the mechanic's VBR by his clock hours, and if the mechanic's flat rate earnings exceeds this VBR calculation, then the mechanic receives only his flat rate earnings and receives no pay for his nonproductive time during his clock hours. Id., Exh. 17 at 1. If the VBR calculation exceeds the mechanic's flat rate earnings, he receives his flat rate earnings plus a supplement equaling the difference between his flat rate earnings and the VBR calculation. Id. There are no records of the number of non-productive hours worked by mechanics, as the pay stubs only account for a mechanic's clock hours and labor hours. Id. at Exh. 1 (Rojack Depo., 209:18-210:13, 212:16-20); Exh. 22.

**2. ESTs**

ESTs perform routine service tasks such as oil, battery and tire changes, and like mechanics, are paid a flat rate based on pre-determined labor hours. Id., Exhs. 13, 14, 15 (EST job descriptions). The EST compensation plan establishes a hybrid pay system including a base hourly rate for all clock hours and flat rate pay for labor hours. Id., Exhs. 18, 19 (EST compensation plans). The productivity target for ESTs is 30%, such that ESTs spend most of the work day performing tasks for which they do not earn a flat rate, including cleaning up, returning parts, unloading tire or parts deliveries, and trainings. Id., Exh. 1 (Rojack Depo., 71:4-74:9, 95:1-13); Exh. 4 (Faber Depo., 64:12-22, 65:12-14, 72:1-3, 72:16-17, 72:24-25, 73:22-74:7, 75:7-25, 76:16-17); Exhs. 14, 15 (job descriptions explaining that housekeeping is part of job duties). EST pay stubs do not report the number of hours ESTs

3

1 spend on this non-productive work. Id., Exh. 23. Plaintiffs allege that when ESTs cannot
2 earn flat rate pay, they are paid a base hourly rate that is less than the California minimum
3 wage of $8.00 per hour. See Mot. for Class Certification at 8. Plaintiffs also contend that
4 Defendants deliberately built in non-productive time for mechanics and ESTs that leaves
5 these employees waiting around for customers to arrive and prevents them from earning the
6 higher flat rate compensation. Id.

### 3. CSMs

CSMs are in charge of commercial sales departments at their stores, and receive a base hourly rate for their clock hours plus commissions on their department's sales. See Zwillinger Decl., Exh. 16 (CSM job description); Exh. 20 (CSM compensation plan). CSMs also perform non-commission work at their employer's direction, such as helping in the retail store or with merchandising and inventory. Id. at Exh. 1 (Rojack Depo., 107:22-108:12). CSM pay stubs do not account for the amount of time that CSMs spend on this non-commission work. Id. at Exh. 21. Plaintiffs allege that all CSM employees have a base hourly rate that is less than the California minimum wage. See Mot. for Class Certification at 8.

### B.     Defendants' Written Tools Policy[2]

Pep Boys' company-wide policy originally supplied each shop with a set of 54 hand tools for service employees to use. See Reply (dkt. 58) at 12; Zwellinger Decl., Exh. 25 (Hand Tool Policy and Procedures). Since November 2009, Pep Boys has provided each store with a larger "California Lube Kit" containing 76 tools. Id.; Nguyen Decl. Exh. 22 (dkt. 49-4). "While the policy enumerates the quantity and description of the tools included in the tool box, it also provides that the list "may be updated or added to periodically." See Zwellinger Decl., Exh. 25 (Hand Tool Policy and Procedures). In addition, the policy states that "[i]f for any reason there may be a tool or equipment required for performing a function

---

[2] Plaintiffs allege that Defendants' written tools policy applies uniformly. See Mot. for Class Certification at 8. Defendants contend that this is an "erroneous assumption" as the policy documents and declarant testimony, including Plaintiff testimony, demonstrates that stores varied widely regarding the tools regularly made available for employees to use and practices for obtaining additional tools when requested by an employee. See Opposition to Class Certification ("Opp'n") (dkt. 49) at 2.

4

1 but missing from the inventory, notify management immediately." Id. The policy provides
2 for the most common tools used in automotive service work. Id.; Exh. 2 (2013 Deposition of
3 Human Resources Director Bryan LaBart ("LaBart 2013 Depo."), 56:9-57:11). Each store
4 had access to a minimum of one California Lube Kit with the option to order additional as
5 needed through the company's supply order system, or "SOS." See LaBart 2014 Depo. (dkt.
6 55-4) at 21:5-8; 23:11-25.

7 Defendants do not require employees to provide their own tools as a condition of
8 employment, but allow employees to bring in their own tools if they so choose. See
9 Compendium of Evidence (dkt. 49-2), Exh. 20 (Pep Boys policy statement). It is undisputed
10 that many service employees brought their own tools to work. See Mot. for Class
11 Certification at 9. Defendants' policy statement informs managers that while "Pep Boys does
12 not require any applicant for any position to provide his or her own tools," "an employer is
13 not required to provide specialty tools or any tool requested by an employee." See HR Shop
14 Talk: Policy Update, California Stores Only (dkt. 40-8). If an employee required a particular
15 tool not included in the tool box, the tool could potentially be obtained through: a manager,
16 who would decide on a case-by-case basis whether to buy, rent, or borrow from another
17 location the tool for the employee, or whether an alternative tool could be used; the "shop
18 use" practice or "retail loaner" program, which allowed employees to borrow tools from the
19 retail part of the shop; or borrowed from a co-worker or from another Pep Boys store. See
20 Opp'n at 27; LaBart 2013 Depo. at 53:4-11, 23-25; Deposition of Lugardo Herrera (dkt. 55-
21 2) at 60:5-10, 12-14, 16-18. The number of employees working in the service department at
22 any given time, and thus potentially requiring access to tools at the same time, varied widely
23 from store to store. See Declaration of Gerald Rosenbluth (dkt. 40) ¶¶ 23-26; Herrera Depo.
24 at 26:5-7. Defendants do not have a written policy for reimbursing employees for their tool
25 expenses. See Mot. for Class Certification at 10.

26 **C. Procedural History**

27 On August 6, 2012, Plaintiffs filed suit in the Superior Court of California for the
28 County of Alameda. See Notice of Removal (dkt. 1) ¶ 1. On September 13, 2012,

5

Defendants filed a notice of removal to federal court. See generally id. Plaintiffs allege nine causes of action relating to Defendants' written compensation and tools policies. See generally SAC. First, Plaintiffs allege that Defendants failed to pay minimum wage as required by California Labor Code sections 1182.12, 1194, and 1197 and Industrial Welfare Commission ("IWC") Wage Order 4, section 4. Id. ¶ 27(a). The Second, Third, Fourth, Fifth, Seventh, Eighth, and Ninth Claims are derivative claims.[3] See Mot. for Class Certification at 13. Plaintiffs' Sixth Claim alleges that Defendants failed to indemnify employees for necessary business expenses, as required by California Labor Code section 2802 and IWC Wage Order No. 4, section 9. See SAC ¶¶ 62-69.

Plaintiffs now seek to certify two classes, both of which are limited to those workers who were employed during the period from August 6, 2008 through September 30, 2011 (the "class period") and whose employment terminated on or before September 30, 2011. See Mot. for Class Certification at 4. Plaintiffs propose two class definitions and three subclasses as follows:

**Wage Class:** Non-exempt California employees identified in Defendants' electronic business records who were employed in one of the following classifications: Mechanic, Technician, Master Technician, EP Technician, Technician A, Technician B, Smog Technician, Express

---

[3] Second, Plaintiffs allege that Defendants failed to properly pay overtime wages as required by California Labor Code section 510 and IWC Wage Order No. 4, specifically by miscalculating Plaintiffs' regular rates of pay based on an employee's compensation for all hours worked by the employee during the week. SAC ¶¶ 39-41. Third, Plaintiffs allege that Defendants failed to provide accurate itemized wage statements as required by California Labor Code section 226, which must show all applicable pay rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. Id. ¶¶ 46-48. Fourth, Plaintiffs allege that Defendants failed to compensate for missed meal periods as required by California Labor Code section 226.7(b) by failing to properly calculate employees' regular rates of pay to compensate for missed meal breaks. Id. ¶¶ 53-54. Fifth, Plaintiffs allege that Defendants failed to pay all wages when due as required by California Labor Code sections 201, 202, and 204 by failing to properly and timely pay minimum wages, overtime compensation, and missed break premium wages to employees. Id. ¶¶ 58-59. Seventh, Plaintiffs allege that Defendants have committed unlawful, unfair or fraudulent business acts and practices as defined by California Business and Professional Code section 17200 by failing to pay minimum wage, overtime, and premiums for missed meal periods, provide all wages due and accurate wage statements, and reimburse employees for business expenses as alleged in claims one through six. Id. ¶¶ 70-79. Eighth, Plaintiffs seek civil penalties for violations of the California Labor Code under the Private Attorneys General Act, California Labor Code sections 2698-99. Id. ¶¶ 81-85. Ninth, Plaintiffs allege that Defendants failed to pay employees for rest breaks as required by California Labor Code sections 1194 and 1194.2 and IWC Wage Order No. 4 by not providing separate compensation for rest breaks at a rate of at least the California minimum wage. Id. ¶¶ 87-94.

6

Service Technician ("EST"), Express Service and Sales Technician ("ESST"), Installer, Service Advisor, and Commercial Sales Manager ("CSM"). The Wage Class is subdivided into three Subclasses, each of which was subject to a uniform compensation plan:

> **Mechanic Subclass:** Non-exempt employees in the following classifications: Mechanic, Technician, Master Technician, EP Technician, Technician A, Technician B, and Smog Technician.
>
> **EST Subclass:** Non-exempt employees in the following classifications: Express Service Technician ("EST"), Express Service and Sales Technician ("ESST"), Installer, and Service Advisor. Only those employees whose base hourly rate of pay was less than $8.00 per hour during the class period as established through Pep Boys' electronic payroll records are included in the EST subclass.
>
> **CSM Subclass:** Non-exempt Commercial Sales Managers whose base hourly rate of pay was less than $8.00 per hour during the class period as established through Pep Boys' electronic payroll records .

**Tools Class:** All non-exempt California employees in the following classifications during the class period: Mechanic, Technician, Master Technician, EP Technician, Technician A, Technician B, Smog Technician, Express Service Technician ("EST"), Express Service and Sales Technician ("ESST"), Installer, and Service Advisor.

See Mot. for Class Certification at 4-5. Defendants also move to strike the declaration of Plaintiffs' expert witness, Gerald Rosenbluth, filed in support of Plaintiffs' Motion for Class Certification, because it is inadmissible, unreliable, and improper pursuant to Federal Rules of Evidence 702. See generally Mot. to Strike (dkt. 50).

## II.   LEGAL STANDARD

Class certification under Rule 23 is a two-step process. First, Plaintiffs must meet the four requirements of 23(a): "numerosity," "commonality," "typicality," and "adequacy." Fed. R. Civ. P. 23. "One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011)).

Second, Plaintiffs must also establish that one of the bases for certification in Rule 23(b) is met. Here, Plaintiffs invoke 23(b)(3), which requires Plaintiffs to prove the elements of "predominance" and "superiority": "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rules 23(a) and at least one of the three requirements under Rule 23(b) are met. See Dukes, 131 S.Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

### III.   DISCUSSION

Defendants essentially concede that Plaintiffs have satisfied Rule 23(a)(1), (3), and (4),[4] thus the Court focuses its analysis on Rule 23(a)(2) and Rule 23(b)(3). Specifically, Defendants argue that Plaintiffs' proposed Wage Class and Tools Class both fail to meet Rule 23(a)'s requirement of commonality and Rule 23(b)(3)'s requirements of predominance and superiority. See Def. Opp'n at 1 (dkt. 49).

---

[4] Plaintiffs establish that they meet the requirements of Rule 23(a)(1), (3), and (4). See Mot. for Class Certification at 10-11, 17-18. Although Plaintiffs' CSM Subclass is admittedly small with only 19 members, Defendants do not argue that this number is insufficient to show numerosity under Rule 23(a)(1). See Mot. for Class Certification at 11. In light of case law allowing classes of similar sizes, and in the interest of judicial efficiency and fairness to the Subclass members with modest individual claims, numerosity for the CSM Subclass has been met.

8

**A.    Wage Class**

**1. Commonality Under Rule 23(a)(2)**

The issue is whether Plaintiffs' proposed class presents common questions of law or fact. The Supreme Court recently clarified that the requirement for commonality is only satisfied where "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S. Ct. at 2551. For purposes of class certification, what matters is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Id. (internal quotation omitted).

Here, Plaintiffs contend that the common question central to all wage-related claims is whether Defendants' uniform written compensation plans comply with California minimum wage law. See Mot. for Class Certification at 11. As all other wage-related claims are derivative of Plaintiffs' minimum wage claim, Plaintiffs assert that these claims should be certified because "they will stand or fall on the validity of the pay plans."[5] Id. at 13. (2)

Defendants argue that Plaintiffs fail to present any class-wide method to identify specific hours where Defendants did not pay minimum wage. See Opp'n at 16. Defendants contend that non-productive time cannot be reliably estimated because the actual amount of time employees spent on a flat rate job varied widely due to a number of factors and because

---

[5] Specifically, Plaintiffs explain that common questions regarding their derivative claims include: whether Defendants' method of calculating Wage Class members' overtime compensation violates California law; whether Defendants failed to provide accurate itemized wage statements to Wage Class members and maintain adequate records as required by Labor Code section 226; whether Defendants failed to pay Wage Class members their full wages when due as required by Labor Code sections 201, 202, and 204; whether Defendants' policy of compensating Wage Class members for missed meal breaks at a rate less than their properly calculated rate violates Labor Code section 226.7; whether Defendants' conduct violated Business & Professions Code section 17200 et seq; whether Defendants failed to properly compensate Wage Class members for their rest breaks, as required by IWC Wage Order No. 4, section 12(A); and what relief is necessary to remedy Defendants' alleged conduct. See SAC ¶ 27.

9

1 there are no records of employees' non-productive hours.[6] <u>Id.</u> at 17-18. Defendants further
2 argue that Plaintiffs' derivative wage claims similarly require individual inquiries as to a
3 particular employee's activities during a particular hour. <u>Id.</u> at 21-22.

4       While there are individual issues at play, Plaintiffs' minimum wage claim rises and
5 falls on the legality of a common, company-wide policy. Defendants' liability turns on
6 whether their compensation plans comply with California minimum wage law, which
7 prohibits the averaging of base pay and incentive compensation to fulfill minimum wage
8 requirements. <u>See</u> <u>Gonzalez v. Downtown LA Motors,</u> LP, 215 Cal. App. 4th 36 (2013)
9 (holding that automotive service technicians paid under a piece-rate plan for repair work are
10 also entitled to separate hourly compensation for non-productive time directed by the
11 employer[7] during their work shifts because California law does not allow an employer to
12 average total compensation over total hours worked in a pay period); <u>Armenta v. Osmose,</u>
13 <u>Inc.</u>, 135 Cal. App. 4th 314 (2005) (holding that California employers cannot satisfy
14 minimum wage laws by averaging all forms of compensation across all hours worked, but
15 must pay no less than the minimum wage for each hour); <u>see also</u> <u>Quezada v. Con-Way</u>

---

[6] At the hearing on April 18, 2014, defense counsel argued that Plaintiffs' theory of liability is legally unsupported as the Labor Code does not require employers to pay at least minimum wage for part of every hour worked. However, courts have interpreted the Labor Code to require precisely that. <u>See</u> <u>Quezada</u>, 2014 WL 186224, at *2 (explaining that courts must "consider whether an employee earns at least minimum wage for every hour (or part of every hour) in isolation as opposed to on average"). Plaintiffs describe that because the California minimum wage is $8 per hour, an employee who works half an hour is entitled to $4 for that half-hour, and an employee who works for 15 minutes is entitled to $2 for that quarter of an hour. <u>See</u> Reply at 6, n.6. The Court finds that this theory presents a common question of law as it relates to the overarching determination of whether Defendants' compensation plans comply with California minimum wage law. <u>See</u> <u>Gonzalez</u>, 215 Cal. App. 4th at 49 ("[A] piece-rate formula that does not compensate directly for all time worked does not comply with the California Labor Codes, even if, averaged out, it would pay at least minimum wage for all hours worked" (internal citations omitted)). Defendants further argued that because there are no records of each employee's minute by minute expenditures of time, there is no way to determine whether an employee was properly compensated. This argument goes to the merits of the case, as Plaintiffs contend that Defendants' pay stubs violate California law for failing to provide accurate statements of non-productive time. <u>See</u> Reply at 10.

[7] In their brief and again at the hearing on April 18, 2014, defense counsel attempted to distinguish <u>Gonzalez</u> on the basis that there, the employer did not permit employees to leave work while waiting for vehicles to repair but were expected to perform various non-repair tasks, and here, Defendants do permit employees to leave work if they have no work to do. <u>See</u> Opp'n at 15. This argument is not persuasive in light of the undisputed fact that all employees incur some unproductive time throughout the work day, and it is unreasonable to assume that employees would be permitted to leave work during each stretch of such non-productive time.

10

Freight, Inc., No. 09-3670, 2014 WL 186224 (N.D. Cal. Jan. 16, 2014) (applying Gonzalez and Armenta in finding class certification proper and rejecting defendant's argument that an employer cannot be liable for minimum wage violations as long as within an hour, an employee earns sufficient wages through some compensable task that amount to minimum wage).

Other cases have noted that claims based on a uniform policy are entitled to class certification. See, e.g., Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1033 (2012) ("[c]laims alleging that a uniform policy consistently applied to a group of employees in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment."); Vedachalam v. Tata Consultancy Srvcs., Ltd., No. 06-0963, 2012 U.S. Dist. LEXIS 46429, at *37-*39 (N.D. Cal. April 2, 2012) (Wilken, J.) (rejecting defendants' argument that "this policy was not always uniformly applied"); In re Taco Bell Wage & Hour Actions, No. 07-1314, 2012 WL 5932833, at *6 (E.D. Cal. Nov. 27, 2012) (where defendants admitted that there was a uniform policy but argued that "as a matter of practice, the policy is carried out in a variety of ways," the court relied on Brinker and found that it was sufficient that there was "a corporate policy that was equally applicable to all employees"). Therefore, the Court finds that Plaintiffs' proposed class presents common questions of law and fact under Rule 23(a)(2).

### 2. Predominance Under Rule 23(b)(3)

Rule 23(b)(3)'s predominance requirement is more stringent than Rule 23(a)(2)'s commonality requirement, and "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Wang v. Chinese Daily News, Inc., 737 F.3d 538, 545 (9th Cir. 2013) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998)). Again, Defendants argue that determining liability requires an individualized, hour by hour inquiry to identify specific hours where minimum wage was not paid. See Opp'n at 16. However, Plaintiffs' theory of liability does not require the Court to identify specific hours compensated at below minimum wage for each Wage Class member, but rather whether Defendants' pay plans systematically fail to properly compensate employees for

1  non-productive time. See Reply at 5 n.5. Defendants concede that some plans provided for
2  an hourly base rate that fell slightly below minimum wage, and do not dispute that all
3  employees have some non-productive time, but assert that the plans guaranteed that the
4  hourly rate would be the minimum wage if the other forms of compensation earned by the
5  employees (flat rate earnings and/or commission) did not amount to the minimum wage for
6  all hours worked. See Opp'n at 14. However, this is exactly the kind of "averaging" that
7  Plaintiffs argue is prohibited by California law. See Reply at 5 (citing Gonzalez, 215 Cal.
8  App. 4th at 49 ("[A] piece-rate formula that does not compensate directly for all time worked
9  does not comply with the California Labor Codes, even if, averaged out, it would pay at least
10 minimum wage for all hours worked.")); see also Quezada, 2014 WL 186224, at *2 (noting
11 that "neither Armenta nor Gonzalez held that an employer does not violate California law by
12 failing to pay at least minimum wage for certain tasks, as long as an employee receives at
13 least minimum wage from other tasks within an hour. In fact . . . the reasoning from both
14 Armenta and Gonzalez supports the opposite conclusion"). As Plaintiffs state a class-wide
15 claim under California wage law as established by Gonzalez and Armenta, common issues
16 regarding liability predominate over individual issues.

17      In addition, Defendants argue that class certification must fail because Plaintiffs
18 cannot offer a method of measuring damages that can be applied classwide as required by the
19 Supreme Court's recent decision in Comcast Corp. v. Behrend, 133 S.Ct. 1426 (2013). See
20 Opp'n at 20. In Comcast, the Supreme Court held that in order to satisfy the predominance
21 inquiry, plaintiff must present a model that (1) identifies damages that stem from the
22 defendant's alleged wrongdoing and (2) is "susceptible of measurement across the entire
23 class." 133 S.Ct. at 1433-34. Finding that plaintiffs' damages model did not isolate damages
24 resulting from the accepted theory of antitrust impact, the Court reversed the district court's
25 certification of the class. Id. at 1431.

26      However, the Ninth Circuit has clarified that individualized damage calculations alone
27 cannot defeat class certification. See Leyva v. Medline Industries, Inc., 716 F.3d 510, 513
28 (9th Cir. 2013) (citing Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th

Cir. 2010)). Given the individualized damages determinations present in "nearly all" wage-and-hour class actions, "to decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device." Id. at 513-14 (quoting Brinker, 53 Cal. 4th at 1054). The Ninth Circuit has explained that Comcast requires plaintiffs "to show that their damages stemmed from the defendant's actions that created the legal liability." Id. at 514.

Here, as in Leyva, "if putative class members prove [Defendants'] liability, damages will be calculated based on the wages each employee lost due to [Defendants'] unlawful practices." Id.; In re: High-Tech Employee Antitrust Litig., – F. Supp. 2d –, No. 11-2509, 2013 WL 5770992, at *13 (N.D. Cal. Oct. 24, 2013) (explaining that Comcast does not impede class certification so long as "damages will be calculated based on the wages each employee lost due to [Defendants'] unlawful practices"). Plaintiffs describe that approximate damages can be based on individual testimony about hours worked, representative testimony, and/or Pep Boys' computerized time records of labor hours. See Reply at 8 (citing Hernandez v. Mendoza, 199 Cal. App. 3d 721, 726-27 (1988) ("Although the employee has the burden of proving that he performed work for which he was not compensated, public policy prohibits making that burden an impossible hurdle for the employee")). Accordingly, individual damages issues do not prohibit class certification of the Wage Class. Therefore, the Court GRANTS Plaintiffs' Motion for Class Certification as to the Wage Class.[8]

### B. Tools Class

California Labor Code section 2802 ("Section 2802") provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802. "Once an employer knows or has reason to know that the employee has incurred an expense, then it has the duty to exercise due diligence and take any and all reasonable steps

---

[8] Defendants do not dispute that the majority of Plaintiffs' claims are derivative of the minimum wage violation claim. As the individual issues in these claims relate to damages and not liability, the Court GRANTS class certification as to the derivative wage claims as well.

13

1 to ensure that the employee is reimbursed for the expense." Stuart v. RadioShack Corp., 641
2 F. Supp. 2d 901, 905 (N.D. Cal. 2009). To establish liability under Section 2802, Plaintiffs
3 must prove that Class Members incurred necessary expenses to perform their job duties, and
4 that Defendants knew or should have known that Class Members incurred these necessary
5 expenses. See Mot. for Class Certification at 16.

Plaintiffs argue that Defendants' company-wide tools policies present two questions of law common to the Tools Class.[9] First, whether Defendants violated Section 2802 by their policy of failing to reimburse Tools Class members for the cost of those hand tools and equipment that are necessary for the performance of their jobs. See SAC ¶ 28. Second, whether Pep Boys' policy of providing a standard set of tools at each shop made it "necessary" for Tools Class members to supply their own tools to perform their job duties. Id.

Plaintiffs seek to establish class-wide liability through their expert, Gerald Rosenbluth, who has explained that Defendants required service employees to provide their own tools by failing to provide tools in the necessary quantities to allow for efficient work.[10] See Reply at 18; Rosenbluth Decl. ¶¶ 27-28. Plaintiffs argue that Defendants should supply each service employee with his own set of commonly used tools as well as "specialty tools" used for certain makes and models of cars. See Reply at 14. Because Defendants did not provide the types and quantities of tools required for employees to work efficiently, Plaintiffs

---

[9] In their Reply, Plaintiffs assert a number of "common" questions for the first time, including: (1) whether Pep Boys failed to provide adequate tools from the beginning of the class period in July 2008 until it replaced the original 54-piece tool set with the new 76-piece California Lube Kit; (2) whether Pep Boys' failure to provide specialty tools violates section 2802; (3) whether section 2802 permits an employer to excuse its failure to provide more tools by contending that employees have chosen to bring their own tools; and (4) whether Pep Boys is liable to employees who already owned tools for the depreciation of their tools. See Reply at 15-17. Plaintiffs provide little to no legal authority for why these issues would result in liability under section 2802, and the Court need not address them here. See Dytch v. Yoon, No. 10-2915, 2011 WL 839421, at *3 (N.D. Cal. March 7, 2011) (finding that it is improper for a court to consider an issue raised for the first time in a reply brief) (citing State of Nev. v. Watkins, 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs.")).

[10] Plaintiffs' theory of liability relies on Rosenbluth's testimony as to what tools are necessary for working efficiently, without explaining whether section 2802 requires employers to reimburse employees for expenses that allow them to work more efficiently or whether efficiency is a factor in determining what tools are necessary.

14

argue that there is a common question of whether Pep Boys' failure to provide each service employee with his own tool box made it "necessary" for the Tools Class to provide their own tools. Id. at 15. Plaintiffs contend that this common question can be answered through common evidence, including expert testimony that service employees cannot perform services efficiently if they have to share tools. Id. In addition, Plaintiffs assert that expert testimony can establish why each service employee needed his own set of commonly used and "objectively necessary" tools. Id. at 17.

In addition, Plaintiffs argue that individualized inquiries as to whether a service employee already owned his own set of tools prior to his employment at Pep Boys or purchased tools from some reason other than his employment would be unnecessary at the liability stage, but Plaintiffs do not explain why this inquiry is irrelevant to Defendants' liability. See Reply at 19. Indeed, when and why an employee purchased tools seems central to Plaintiffs' own theory of liability, which is that Defendants required Plaintiffs to incur expenses to perform their job by failing to provide necessary tools in necessary quantities. Id. at 18. Finally, Plaintiffs argue that predominance is easily established for the Tools Class because the claim is based on a uniform policy that is uniformly applied. See Mot. for Class Certification at 20 (citing Schulz v. QualxServ, LLC, No. 09-17, 2012 WL 1439066, at *6 (S.D. Cal. Apr. 26, 2012) ("The common question of whether Defendants' uniform reimbursement policy . . . complies with [state law] can be answered on a classwide basis")). However, this characterization is misleading because unlike the cases cited by Plaintiffs, there is no dispute that Pep Boys does not have a uniform policy for reimbursing employee tool purchases. See Reply at 12.

Defendants argue the Court must assess the reasonableness of each individual employee's choices in determining whether the employee made a "necessary expenditure" under Section 2802. See Opp'n at 24 (citing Grissom v. Vons Co., 1 Cal. App. 4th 52, 58 (1991) ("Necessity is by nature a question of fact . . . accordingly, ascertaining what was a necessary expenditure will require an inquiry into what was reasonable under the circumstances"); see also Morgan v. Wet Seal, Inc., 210 Cal. App. 4th 1341, 1357 (2012)

15

1 (noting that because the employer's written policy did not require the employee to purchase
2 Wet Seal clothing as a condition of employment, "individualized inquiries would be
3 necessary in order to determine whether any given purchase by an employee constituted a
4 'necessary expenditure' within the meaning of section 2802").[11]

Ultimately, individual issues predominate over issues common to the Tools Class. See Dilts v. Penske Logistics, LLC, No. 08-318, 2014 WL 866954, at *7 (S.D. Cal. Feb. 19, 2014) (decertifying a tools class after finding that the "determination of whether class members were wrongfully required to buy tools . . . involves too many individualized questions for class-wide resolution. For instance, who purchased tools, did they inform Penske, and did they seek reimbursement? Were the tools the employees bought to supplement tools provided by Penske in fact necessary?"); see also Chavez v. Lumber Liquidators, No. 09-4812, 2012 WL 1004850, at *10 (N.D. Cal. Mar. 26, 2012) ("[T]o assess the merits of Plaintiffs' reimbursement claim, the Court would need to scrutinize each class member's claimed expenses. Specifically, the Court would need to make individualized factual determinations concerning: (1) whether the claimed expenses were 'necessary' and incurred in direct consequence of the discharge of the employee's duties; (2) whether the employee actually sought reimbursement from LLI for the expenses; and (3) whether LLI reimbursed the employee for the expense."); Harris v. Vector Marketing Corp., 753 F. Supp. 2d 996, 1022 (N.D. Cal. 2010) (denying class certification where plaintiff failed to demonstrate "that evaluation under § 2802 of the 'necessity' of various expenses incurred in

---

[11] Defendants do not challenge Plaintiffs' definition for the Tools Class, but this Court has denied certification where the class definition is overbroad. See In re AutoZone, Inc., Wage and Hour Employment Practices Litig., 289 F.R.D. 526, 545-546 (N.D. Cal. 2012). "A class definition should be precise, objective, and presently ascertainable," though "need not be so ascertainable that every potential member can be identified at the commencement of the action." O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotations omitted). In addition, a class that includes those who have not been harmed is both imprecise and overbroad. See Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009). Here, the language of the proposed class includes Pep Boys' employees who never purchased tools or sought reimbursement. See Mot. For Class Certification at ii (defining class as "all non-exempt California employees in the following classifications during the class period"). Such employees have no standing to sue for failure to reimburse, absent evidence that Defendants knew or should have known that they incurred reasonable and necessary business-related expenses. See Stuart v. Radioshack Corp., 641 F. Supp. 2d 901, 903-04 (N.D. Cal. 2009) (employer's duty under California Labor Code § 2802 only triggered if employer knew or had reason to know that the employee incurred the expenses).

16

1 a variety of contexts may be done on a relatively uniform basis" and "[d]etermining the
2 necessity of the variety of expenses incurred by [employees] appears to involve qualitative as
3 well as quantitative analysis, not a 'straightforward calculation'") (citing Local Joint
4 Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152,
5 1163 (9th Cir. 2001)).

Because Defendants' policies permitted, but did not require, employees to use their own tools at work, Plaintiffs fail to demonstrate how they can establish class-wide liability under Section 2802 when the evidence shows that putative class members used the tools provided by Defendants and/or brought their own tools for a variety of reasons.[12] See Opp'n at 26. Even considering Rosenbluth's declaration, the admissibility of which is in dispute, Plaintiffs have not provided a class-wide method of determining whether various tools purchased by employees throughout California were necessary under Section 2802, "rather than simply better or more convenient." See Dilts, 2014 WL 866954, at *7; see also Howard v. Gap, No. 06-6773, 2009 WL 3571984, at *5 (N.D. Cal. Oct. 29, 2009) (denying class certification for a section 2802 claim for lack of predominance and explaining that "[i]t is not enough for the class representative to testify as to his or her story. There must be a common method of proof that tends to establish the required elements of liability as to all class members.").

As there is no written policy requiring employees to purchase necessary tools,[13] Plaintiffs fail to offer "significant proof" that Defendants operate under a general practice of requiring employees to provide their own tools without reimbursement as a class-wide basis

---

[12] See, e.g., Herrera Depo at 95:9-12 (describing that he "never needed to" ask Defendants to get a second tool kit but he knew that he could get another one); Deposition of Jose Montelongo (dkt. 55-3) at 62:1-9 (noting that "it would probably be a preference for" his employees to keep their own set of tools because then "[t]hey know where everything is at"); Compendium of Evidence, Exh. 28 (Declaration of Alvaro Anaya) ¶ 15 ("I like using my own tools because I can have my favorite brand and take care of them the way I want to").

[13] Despite Defendants' policy statements which describe that employees cannot be required to bring their own tools to work, Plaintiffs allege that there is no written policy specifically informing employees that they were not required to bring their own tools. See Reply at 18. This argument is not persuasive as Plaintiffs do not contend that they relied on any representations, written or oral, made by Defendants or various supervisors in bringing their own tools to work.

17

for liability. See Dukes, 131 S. Ct. at 2253 (where Wal-Mart's announced policy forbid sex discrimination and plaintiffs' additional evidence did not amount to "'significant proof' that Wal-Mart 'operated under a general policy of discrimination.'"). Because Plaintiffs fail to establish predominance as to liability, and damages are also individualized,[14] the Court DENIES class certification as to the Tools Class.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS class certification as to the Wage Class and DENIES class certification as to the Tools Class. As Plaintiffs' proposed Tools Class will not be certified, the Court DENIES Defendants' Motion to Strike as moot.

**IT IS SO ORDERED.**

Dated: April 28, 2014

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[14] For example, Plaintiff Tokoshima claims at least $9,933 in unreimbursed tools and equipment used during his employment at Pep Boys, and currently uses those tools for his own mechanic shop. See Compendium of Evidence (dkt. 49-4), Exh. 23 (Tokoshima Supplemental Response to Interrogatories) at 5; Tokoshima Depo. at 181:2-7. Conversely, Plaintiff Vargas seeks approximately $120 for tools purchased, and subsequently returned, during his employment at Pep Boys. See Compendium of Evidence, Exh. 24 (Response to Interrogatories) at 14.

18