1  Eve H. Cervantez (SBN 164709)
   Eileen B. Goldsmith (SBN 218029)
2  ALTSHULER BERZON LLP
   177 Post Street, Suite 300
3  San Francisco, CA 94108
   Tel. (415) 421-7151
4  Fax (415) 362-8064
   Email: ecervantez@altber.com
5
   Matthew J. Matern (SBN 159798)
6  Dalia Khalili (SBN 253840)
   RASTEGAR & MATERN,
7  ATTORNEYS AT LAW APC
   1010 Crenshaw Boulevard, Suite 100
8  Torrance, CA 90501
   Tel. (310) 218-5500
9  Fax (310) 218-1155
   Email: mjm@rastegar-matern.com
10
   Class Counsel
11
                     UNITED STATES DISTRICT COURT
12
                     NORTHERN DISTRICT OF CALIFORNIA
13

14  STEVE TOKOSHIMA, LUIS FLORES, and       CASE NO. C 12-4810 CRB
    JAMES FABER, on Behalf of Themselves and All
15  Others Similarly Situated,              **PLAINTIFFS' NOTICE OF MOTION
                                            AND MOTION FOR FINAL APPROVAL
16              Plaintiffs,                  OF CLASS ACTION SETTLEMENT AND
                                            APPROVAL OF CLASS
17    vs.                                   REPRESENTATIVE SERVICE
                                            PAYMENTS**
18  THE PEP BOYS - MANNY MOE & JACK OF
    CALIFORNIA, a California Corporation; THE PEP   Date:   January 9, 2015
19  BOYS - MANNY MOE & JACK, a Pennsylvania  Time:   10:00 a.m.
    Corporation; and DOES 1-10,             Ctrm:   6
20                                          Judge:  Hon. Charles R. Breyer
               Defendants.
21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF CLASS REPRESENTATIVE SERVICE PAYMENTS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 9, 2015 at 10:00 a.m., pursuant to this Court's September 26, 2014 Order Granting Preliminary Approval of Class Action Settlement (Dkt. 73), in the courtroom of the Honorable Charles R. Breyer, Courtroom 6, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs will and hereby do move this Court under Fed. R. Civ. P. 23(e) for final approval of the Settlement in this class action, and for approval of class representative service payments in the amount of $10,000 each for named plaintiffs Steve Tokoshima and James Faber, and $7,500 for named plaintiff Luis Flores.

This motion is made on the grounds that the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  The Settlement was reached after extensive investigation and discovery; substantial litigation, including this Court's certification of plaintiffs' minimum wage and related wage claims as a class action; and mediation followed by several months of arms-length settlement negotiations.  The Settlement results in a $3.6 million non-reversionary settlement fund, and will provide substantial recoveries to approximately 1,490 Class Members.  The requested class representative service payments are fair and reasonable in comparison to the overall settlement and individual recoveries, and in light of the effort expended by the class representatives on behalf of the Class and similar awards approved by the federal district courts.

The motion is based on this Notice, the attached Memorandum of Points and Authorities, the accompanying declarations of Eve H. Cervantez, Matthew J. Matern, and Jarrod Salinas, the Court's file in this action, and such argument as may be heard by the Court.

Dated: December 1, 2014

By:    */s/ Eileen B. Goldsmith*
      Eileen B. Goldsmith

Eve H. Cervantez (SBN 164709)
Eileen B. Goldsmith (SBN 218029)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
Email: ecervantez@altber.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Matthew J. Matern (SBN 159798)
Dalia Khalili (SBN 253840)
RASTEGAR & MATERN,
ATTORNEYS AT LAW APC
1010 Crenshaw Boulevard, Suite 100
Torrance, CA 90501
Tel. (310) 218-5500
Fax (310) 218-1155
Email: mjm@rastegar-matern.com


Class Counsel

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT – Case No. C 12-4810 CRB

1

<u>**TABLE OF CONTENTS**</u>

2

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND APPROVAL OF CLASS
REPRESENTATIVE SERVICE PAYMENTS** ..................................................... i

**TABLE OF CONTENTS** ....................................................... iii

**TABLE OF AUTHORITES** ........................................................ v

**SUMMARY OF ARGUMENT** ........................................................ vii

**MEMORANDUM OF POINTS AND AUTHORITIES** ................................. 1

**I. INTRODUCTION** ....................................................... 1

**II. CASE BACKGROUND** ....................................................... 1

    **A. Summary of the Lawsuit and Procedural History** ........................... 1

        1. <u>Overview</u> ...................................................... 1

        2. <u>Procedural History</u> ........................................... 2

        3. <u>Mediation and Settlement Discussions</u> ........................ 3

    **B. Notice to the Class and Class Member Response to the Settlement** ........... 4

**III. SETTLEMENT TERMS** ....................................................... 5

**IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT** ........ 7

    **A. The Strength of Plaintiffs' Claims, Balanced Against the Risks
    and Complexity Involved, and the Risk of Maintaining
    Class Action Status Through Trial, Strongly Supports
    Approval of the Settlement.** ................................................. 8

    **B. The Extent of Discovery and the Stage of the Proceedings Show
    That Class Counsel Was Fully Informed of the Strengths and
    Weaknesses of the Case and the Relative Benefits of the Settlement.** ....... 10

    **C. The $3.6 Million Non-Reversionary Settlement Amount is
    Fair and Reasonable.** ..................................................... 11

    **D. The Experience and Views of Class Counsel Strongly Support Approval.** ............... 12

    **E. Class Members Uniformly Support the Settlement.** ................................. 12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**F. The *Bluetooth* Factors Also Support Approval of the Settlement.** ............................ 12

**G. The Requested Service Payments are Reasonable.** .................................................. 13

**V. CONCLUSION** .................................................................................................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Federal Cases**

*In re Bluetooth Headsets Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011) ................................................................... viii, 12, 13

*Bond v. Ferguson Enters., Inc.*,
 2011 WL 2648879 (E.D. Cal. June 30, 2011) ..........................................15

*Boring v. Bed Bath & Beyond*,
 Case No. C 12-05259 JST, 2014 WL 2967474 (N.D. Cal. June 30, 2014)................................15

*Churchill Vill., L.L.C. v. Gen. Elec.*,
 361 F.3d 566 (9th Cir. 2004) ................................................................ vii, 7, 13

*Class Plaintiffs v. City of Seattle*,
 955 F.2d 1268 (9th Cir. 1992) ...........................................................................7, 8

*Dennis v. Kellogg Co.*,
 697 F.3d 858 (9th Cir. 2012) ...............................................................................6

*Ellis v. Naval Air Rework Facility*,
 87 F.R.D. 15 (N.D. Cal. 1980) ..........................................................................12

*Greene v. Gino Morena Enters. Inc.*,
 2014 WL 5606442 (C.D. Cal. Nov. 4, 2014) ......................................................15

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ...........................................................................8

*Nat'l Rural Telecomm. v. DirecTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004).................................................................7, 12

*Ontiveros v. Zamora*,
 2014 WL 5035935 (E.D. Cal. Oct. 8, 2014).......................................................15

*Ramirez v. Ghilotti Bros. Inc.*,
 Case No. C 12-04590 CRB, 2014 WL 1607448 (N.D. Cal. Apr. 21, 2014) ...................... viii, 14

*Rodriguez v. West Publishing Corp.*,
 563 F.3d 948 (9th Cir. 2009) ............................................................... viii, 14

*Ross v. U.S. Bank NA*,
 Case C 07-02951 SI, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) .........................15

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ..........................................................................14

*Van Bronkhorst v. Safeco Corp.*,
 529 F.2d 943 (9th Cir. 1976) .............................................................................7

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ........................................................................8, 10

**California Cases**

*Armenta v. Osmose, Inc.*,
    135 Cal.App.4th 314 (2005) ...........................................................................................9

*Bluford v. Safeway Stores, Inc.*,
    216 Cal.App.4th 864 (2013) ...................................................................................2, 3, 9

*Gonzalez v. Downtown LA Motors*,
    215 Cal.App.4th 36 (2013) ..................................................................... vii, 8, 9, 10

**Federal Statutes and Court Rules**

Class Action Fairness Act,
    28 U.S.C. § 1332(d) .......................................................................................................2

Fed. R. Civ. P. 23(e)(2) ...................................................................................... vii, 1, 7

**California Statutes**

Bus. & Prof. Code
    § 17200 ...........................................................................................................................2

Labor Code
    § 201 ...............................................................................................................................2
    § 202 ...............................................................................................................................2
    § 203 .........................................................................................................................2, 11
    § 204 ...............................................................................................................................2
    § 226 ...............................................................................................................................2
    § 226.7 ............................................................................................................................2
    § 510 ...............................................................................................................................2
    §1182.12 .........................................................................................................................2
    §1197 ..............................................................................................................................2
    §1194.2 .........................................................................................................................11
    § 2802 .............................................................................................................................2

**Other Authorities**

IWC Wage Order No. 4, § 12(A) ...................................................................................2

## SUMMARY OF ARGUMENT

The $3.6 million, non-reversionary Settlement should be approved because it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The gross settlement fund exceeds Defendants' exposure on the core minimum wage claims in this case. The Settlement will provide payments to approximately 1,490 Class Members, who will automatically be mailed individually calculated payments without having to submit a claim form. The Settlement is an outstanding result that provides for substantial individual Class Member recoveries while avoiding the risk and delay inherent in further litigation. No Class Member has objected to the Settlement or opted out.

All of the relevant considerations support approval of the Settlement. *See Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Balancing the strength of Plaintiffs' claims against the risks of the litigation and the risk of being unable to maintain the case as a class action through trial, the Settlement should be approved. Plaintiffs' minimum wage and derivative claims are certified as a class action, but their tools claim is not. Dkt. 65. Although Plaintiffs believe the wage claims are strong on the merits especially in light of the published California Court of Appeal decision in *Gonzalez v. Downtown LA Motors*, 215 Cal.App.4th 36 (2013), Pep Boys has asserted substantial defenses on both factual and legal grounds. There are also significant challenges of proof with respect to the amount of non-productive time worked by Class Members. Pep Boys also stated its intent to move to decertify the wage class before trial. To prevail on the tools claim on a class basis, plaintiffs would first have to successfully appeal the denial of class certification as to that claim.

In addition, the amount offered in Settlement is fair, reasonable, and adequate. Based on preliminary estimates, the amount available for Class Member settlement payments is approximately $2,348,500. Settlement Payments will be individually calculated based on subclass membership and eligible workweeks in a covered class position. Members of the Mechanic Subclass will recover an estimated $2,245 per year working in a covered position, and members of the Base Pay Subclass will recover an estimated $1,122 per year working in a covered position. The Settlement Payments are weighted to account for the likely larger individual recoveries for Mechanic Subclass members had Plaintiffs prevailed at trial on their legal theories.

1    Moreover, the Settlement was only reached after extensive investigation and formal and

2   informal discovery, as well as a fully litigated motion for class certification.  The Settlement was

3   reached after mediation with the assistance of an experienced mediator, followed by several months

4   of arms-length settlement discussions.  Class Counsel, who are highly experienced class action

5   lawyers, strongly support the Settlement.  Their views were informed by their extensive investigation

6   and research, as well as the Court's ruling on class certification.  Class Members strongly support the

7   Settlement as well.

8    Although the analysis of *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th

9   Cir. 2011), does not apply here because this settlement was reached only after class certification

10  rather than before certification, the Settlement also passes muster under *Bluetooth*.  Under the

11  Settlement, Class Counsel will receive an award of attorneys' fees only if the Court approves the

12  entire Settlement amount as fair and reasonable to the Class.  Any amount of the requested fee that

13  the Court does not award will not revert to Defendants, but will be added to the amount available for

14  Class Member settlement payments.  The amount of the Settlement allocated to attorneys' fees is not

15  disproportionate.  Thirty percent of the Settlement is allocated to attorneys' fees.  That amount is

16  fully justified by the risks of the litigation and the results obtained, is in line with fee awards in

17  comparable cases under recent decisions, and is significantly less than Class Counsel's actual

18  lodestar.  *See* Pls' Motion for Attorneys' Fees and Expenses, filed today.

19    Finally, the Court should approve the requested class representative service payments of

20  $10,000 each for named plaintiffs Steve Tokoshima and James Faber (both of whom were deposed),

21  and $7,500 for Luis Flores (who was not deposed).  Each plaintiff performed substantial work on

22  behalf of the Class, and undertook significant personal financial and reputational risk, as is detailed

23  in their declarations in support of preliminary approval.  *See* Dkt. 72-5, 72-6, 72-7.  The amounts

24  requested are commensurate with the work they performed, and are consistent with recent service

25  payment awards.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009);

26  *Ramirez v. Ghilotti Bros. Inc.*, Case No. C 12-04590 CRB, 2014 WL 1607448 at *2 (N.D. Cal. Apr.

27  21, 2014) (approving service payments of $15,000 each to three class representatives from $950,000

28  settlement fund); and cases cited *infra* at 14-15.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT – Case No. C 12-4810 CRB

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

Plaintiffs have settled this class action with Pep Boys, securing a $3.6 million, non-reversionary settlement that will benefit approximately 1,490 former Pep Boys employees, who will receive, on average, approximately $2,245 (for mechanics) or $1,122 (for ESTs) for each year they worked at Pep Boys.  The settlement resolves claims that Pep Boys failed to comply with California minimum wage law (and related derivative claims) and failed to reimburse its mechanics and technicians for tools that, plaintiffs allege, employees had no choice but to supply themselves in order to do their jobs.  The gross settlement fund actually exceeds the value of Plaintiffs' core minimum wage claims.  The Settlement provides substantial recoveries now for workers of relatively modest means – without any claims process – and is an extraordinary result in light of the significant risks inherent in further litigation.

The Settlement should be approved because it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Settlement was reached only after substantial investigation and formal and informal discovery, the Court's certification of the minimum wage and derivative claims as a class action (Dkt. 65), and mediation with the assistance of a highly experienced and respected mediator followed by arms-length settlement negotiations over a period of several months.  The Class has received notice of the Settlement, and no one has objected or opted out.  The Court should therefore grant final approval.

**II.     CASE BACKGROUND**

**A.      Summary of the Lawsuit and Procedural History**

**1.      Overview**

In this class action, plaintiffs Steve Tokoshima, James Faber, and Luis Flores alleged that Pep Boys violated California law by failing to compensate them and the Settlement Class in accordance with state minimum wage law, and by failing to reimburse them for tools that employees needed to do their work and were forced to supply themselves.  The Class consists of Pep Boys mechanics (the Mechanic Subclass), as well as lower-skilled automotive technicians in several classifications (known as "ESTs") and commercial sales managers whose base hourly rate

of pay was less than $8.00 per hour (referred to collectively in the Settlement as the "Base Pay Subclass").  *See* Dkt. 65 at 7 (Order re Motion for Class Certification and Motion to Strike, April 28, 2014).  The Class is limited to employees in the covered classifications who worked for Pep Boys in California between August 6, 2008 and September 30, 2011, and whose employment with Pep Boys terminated on or before September 30, 2011.  *Id.* at 6.

The operative Second Amended Complaint (Dkt. 36) alleges nine causes of action under California law: 1) violation of California minimum wage law (Labor Code §§1182.12, 1197); 2) miscalculation of overtime wages paid (Labor Code §510); 3) failure to provide accurate itemized wage statements under Labor Code §226; 4) miscalculation of premiums for missed meal breaks under Labor Code §226.7; 5) waiting time penalties under Labor Code §§201, 202, 203 & 204; 6) violation of Labor Code §2802 by failing to reimburse mechanics and ESTs for tools reasonably and necessarily supplied by the employees to perform their work; 7) unfair and unlawful business practices under Bus. & Prof. Code §17200; 8) PAGA penalties; and 9) failure to pay employees for rest breaks, pursuant to IWC Wage Order No. 4, §12(A), and *Bluford v. Safeway Stores, Inc.*, 216 Cal.App.4th 864, 872 (2013).  Pep Boys denies liability, and disputes plaintiffs' theories on important points of law and fact.  Settlement Agreement, Dkt. 72-2 ("Settlement"), ¶I.

## 2. Procedural History

Before filing the complaint, plaintiffs' counsel engaged in a substantial investigation over several months, interviewing numerous current and former Pep Boys employees, reviewing documents relating to their employment, and researching the potential claims in the case. Cervantez Decl. ¶5.  Plaintiffs filed the original complaint as a class and representative action in Alameda County Superior Court on August 6, 2012.  Pep Boys timely removed the action to this Court under the Class Action Fairness Act, 28 U.S.C. §1332(d).  *See* Dkt. 1.

In the initial case management conference, this Court authorized the parties to engage in discovery pertaining to class certification.  Dkt. 14.  Pursuant to this direction, the parties conducted extensive and thorough formal discovery.  Although discovery was initially limited to that necessary for class certification, the parties exchanged approximately 2,000 pages of documents, and propounded and responded to written interrogatories and requests for admission.

1    Plaintiffs took two 30(b)(6) depositions of Pep Boys' corporate designees, and later deposed one of

2    those designees a second time.  Defendants deposed named plaintiffs Tokoshima and Faber, and

3    Gerald Rosenbluth, an automotive expert retained by plaintiffs to provide opinions regarding the

4    need for Class Member mechanics and ESTs to supply their own tools to do their work.  Plaintiffs

5    also deposed three service managers who provided declarations on behalf of Pep Boys.  Through

6    this formal discovery and informal investigation, together with further informal discovery and

7    investigation in advance of mediation on July 24, 2013 (*see infra* at 3-4), Class Counsel was able to

8    obtain a full understanding of the value of the claims and the risks of the litigation.  Cervantez

9    Decl. ¶7.

10       The parties first agreed to mediate this case before briefing class certification, with the

11   assistance of Mark S. Rudy, a well-regarded mediator with extensive experience litigating and

12   mediating wage-and-hour class actions.  Because the parties were unable to resolve this case at the

13   July 24, 2013 mediation, they resumed active litigation.  Cervantez Decl. ¶9.  At that time,

14   plaintiffs amended the complaint to add a claim for failure to pay employees for rest breaks, based

15   on the California Court of Appeal's published decision in *Bluford*.  Dkt. 36.

16       In November 2013, Plaintiffs moved for class certification of the minimum wage and

17   derivative wage and penalty claims, and the tools claim.  Following full briefing, oral argument,

18   and further supplemental briefing, the Court issued its order on April 28, 2014, certifying the wage

19   claims and denying certification of the tools claim.  Dkt. 65.

20              3.    Mediation and Settlement Discussions

21       Before the mediation, Pep Boys provided payroll data and contact information for a sample

22   of employees within the proposed class definition.  Plaintiffs' Counsel retained a damages expert to

23   provide detailed damages calculations for the minimum wage and derivative wage claims.

24   Plaintiffs' Counsel also interviewed approximately 50 Class Members on the contact list provided

25   by Pep Boys.  In the days before the mediation, the parties exchanged thorough mediation briefs,

26   including detailed, claim-specific analyses of Pep Boys' potential financial exposure.  Plaintiffs'

27   Counsel also supplied several declarations from Class Members who were interviewed.  Cervantez

28   Decl. ¶11.

The parties met for an all-day mediation with Mr. Rudy's assistance on July 24, 2013. Although the parties did not reach agreement that day, they continued to communicate over the following months through Mr. Rudy regarding settlement. Class Counsel continued to analyze the strengths and weaknesses of plaintiffs' legal claims, including arguments raised by Pep Boys at the mediation and in the class certification briefing, and Pep Boys' analysis of its exposure. Following this Court's April 28, 2014 order certifying the wage claims and denying certification of the tools claims, the parties exchanged further detailed memoranda through Mr. Rudy setting forth their respective settlement positions. Mr. Rudy then made a mediator's proposal, which both parties accepted on June 2, 2014. Cervantez Decl. ¶12.

Following the parties' acceptance of the mediator's proposal, counsel for the parties continued to negotiate the details of the Settlement Agreement and the Class Notice over the next two months. The proposed settlement was negotiated in good faith and at arms' length. The parties vigorously pressed their positions throughout. The settlement creates a $3.6 million, non-reversionary common fund on behalf of approximately 1,490 Pep Boys employees. Cervantez Decl. ¶13; *see infra* Section III.

### B.   Notice to the Class and Class Member Response to the Settlement

The Court granted preliminary approval of the Settlement on September 26, 2014 and ordered notice to be distributed to the Class. Dkt. 73. The Court-approved Notice of Settlement was mailed to all 1490 Class Members at their last-known addresses (as updated through the US Postal Service National Change of Address database) on October 16, 2014. Salinas Decl. ¶9. The Settlement Administrator, Simpluris Inc., forwarded the Notice to any Class Member whose Notice was returned by the Postal Service with a forwarding address. *Id.* ¶10. Simpluris has skip-traced all Class Members whose notices were returned as undeliverable without forwarding addresses to date, and remailed the Notice to any Class Member for whom skip-tracing revealed a more recent address. Out of 1,490 notices mailed, only 37 are undeliverable. *Id.* ¶11. The Notice provided that the deadline for opting out or objecting to the Settlement is December 15, 2014. Salinas Decl. Exh. A; Dkt. 72-3 at 8-9 ¶¶14-15. At the time of filing, no Class Members had opted out or objected. Salinas Decl. ¶12. Accordingly, it appears that Class Members overwhelmingly support the

1   Settlement.[1]

2   **III.    SETTLEMENT TERMS**

3          The principal terms of the Settlement Agreement are discussed in detail in Plaintiffs'

4   motion for preliminary approval.  Dkt. 72 at 4-9.  We summarize the key provisions here.

5          The $3.6 million, non-reversionary settlement fund is allocated as follows: (1) Class

6   Member settlement payments; (2) $5,000 to the Labor & Workforce Development Agency

7   ("LWDA") for PAGA penalties; (3) up to $1,080,000 for attorneys' fees; (4) up to $100,000 in

8   litigation expenses[2]; (5) up to $39,000 in settlement administration costs; and (6) $27,500 for class

9   representative service payments ($10,000 each for plaintiffs Tokoshima and Faber, and $7,500 for

10  plaintiff Flores).  Settlement ¶V.2.1.  Any amounts allocated to attorneys' fees and expenses,

11  administrative costs, or class representative service payments that are not awarded as set forth in

12  the Settlement will be added to the amount available for Class Member settlement payments.

13  Settlement ¶¶V.1.27, V.1.39, V.8.1, V.10.2.[3]  In addition to the $3.6 million settlement amount,

14  Pep Boys will pay the employer's share of payroll taxes on that portion of the initial distribution of

15  settlement payments that is allocated to wages.  Settlement ¶V.1.27.  At this time, the estimated

16  amount of the settlement fund allocated to Class Member settlement payments is $2,348,500.

17         The Settlement will provide substantial recoveries for all Class Members who can be

18  located.  Each such Class Member will be mailed a settlement check, without having to submit a

19  claim form.  Settlement payments will be calculated based on the number of workweeks in the

20  class period during which the Class Member worked in a covered position.  Settlement ¶¶V.8.2-

21  V.8.3.  Based on preliminary estimates, Mechanic Subclass members will receive approximately

22  $43.18 per eligible workweek (or $2,245 per year for a full year in a class position within the class

23
24  [1] Plaintiffs will submit an updated declaration from the Settlement Administrator in advance of the
    January 9, 2015 final fairness hearing.

25
26  [2] None of the $3.6 million settlement amount will revert to Pep Boys except the settlement
    payment shares of any Class Member who opts out of the settlement.  Settlement ¶V.8.3, V.8.12.
    To date, no one has opted out.

27  [3] As set forth in plaintiffs' Motion for Attorneys' Fees and Expenses filed today, Class Counsel
    request an award of $97,207.56 for litigation expenses.

28

period), and Base Pay Subclass members will receive approximately $21.59 per workweek ($1,122 per year).[4]  The gross settlement amount is actually more than the value of the core minimum wage claims.  Dkt. 72-1 ¶28.

The settlement payments are weighted based on the relative recoveries Class Members would have obtained had they prevailed at trial under plaintiffs' theories in this litigation.  Plaintiffs' minimum wage and derivative claims are based on the theory that Pep Boys' pay plans failed to compensate Class Members at no less than the California minimum wage for that time when employees were on the clock, but were not performing work for which they could earn piece rate pay or commissions.  Plaintiffs contended that ESTs and CSMs – the Base Pay Subclass – earned a base hourly wage rate for all hours, and thus received some compensation for their non-productive time, while members of the Mechanic Subclass did not receive any compensation for their non-productive time.  Under plaintiffs' theories, mechanics also incurred higher reimbursable tools expenses than ESTs.  Therefore, the plan of allocation provides that Mechanic Subclass members receive twice as much per workweek as Base Pay Subclass members.

After the initial distribution of settlement payments to all Class Members who have been located during the notice process, Class Members will have up to 90 days to cash their settlement checks.  Any amounts that remain uncashed after this first distribution will be available for redistribution.  If the amount available for redistribution exceeds $75,000, the amount exceeding $75,000 will be available for a second distribution to Class Members who cashed their initial settlement checks, while $75,000 will be distributed to the cy pres recipient.  Settlement ¶¶V.8.4-V.8.10.  If the amount available for redistribution does not exceed $75,000, that entire amount will be distributed to the *cy pres* recipient.

The *cy pres* recipient is the National Automotive Technicians Education Foundation ("NATEF").  Settlement ¶V.8.11.  NATEF is an appropriate *cy pres* beneficiary in light of the objectives of this litigation and the interests of the absent Class Members.  *See Dennis v. Kellogg*

---

[4] Base Pay Subclass members will receive settlement payments only for those workweeks in which their base hourly rate of pay was less than the then-applicable California minimum wage of $8.00 per hour.  Settlement ¶V.1.19.

1   *Co.*, 697 F.3d 858, 865-66 (9th Cir. 2012).  NATEF is a not-for-profit organization that strives to

2   improve the quality of automotive technician training programs, and acts in the interest of all

3   automotive workers by helping to train the next generation of skilled technicians.  Dkt. 72-1 ¶30.

4        Upon the Settlement's effective date, all Settlement Class Members who have not validly

5   opted out will be deemed to have released Pep Boys and all related entities from all claims that

6   were or could have been asserted based on the facts and allegations in the Second Amended

7   Complaint.  Settlement ¶V.1.38.

8   **IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

9        The law favors settlement, particularly in class actions and other complex cases where

10  substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.

11  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Final approval of a proposed

12  class action settlement should be granted where it is established that the proposed settlement is

13  "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In determining whether to grant final

14  approval, the Court does not "reach any ultimate conclusions on the contested issues of fact and

15  law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation

16  and avoidance of wasteful and expensive litigation that induce consensual settlements."  *Class*

17  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (quoting *Officers for Justice v.*

18  *Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).)  "[U]nless the settlement is clearly

19  inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

20  uncertain results."  *Nat'l Rural Telecomm. v. DirecTV, Inc.*, 221 F.R.D. 523, 526.  (C.D. Cal.

21  2004).

22       In ruling on final approval, the Court should consider the following factors:

23       (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely

24       duration of further litigation; (3) the risk of maintaining class action status
    throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

25       completed and the stage of the proceedings; (6) the experience and views of
    counsel; (7) the presence of a governmental participant; and (8) the reaction of the

26       Class Members to the proposed settlement.

27  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

28       The relative importance of any particular factor will depend upon the nature of the claims,

7

1    the types of relief sought, and the facts and circumstances presented by the individual case.  *Class*

2    *Plaintiffs*, 955 F.2d at 1291.  Furthermore, "this list of factors is not exclusive and the court may

3    balance and weigh different factors." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488

4    (E.D. Cal. 2010) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1983)).

5        As explained below, the relevant factors support granting final approval to this Settlement.

6        **A.    The Strength of Plaintiffs' Claims, Balanced Against the Risks and Complexity**
         **Involved, and the Risk of Maintaining Class Action Status Through Trial,**
7        **Strongly Supports Approval of the Settlement.**

8        Balancing the strengths of plaintiffs' case against the "risk, expense, complexity, and likely

9    duration of further litigation" and the "risk of maintaining class action status throughout the trial,"

10   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), the settlement is clearly in the

11   Class' best interest.

12       Plaintiffs sought classwide relief on both their minimum wage and derivative claims, and

13   on the tools claim.  Although plaintiffs believed that both the wage and tools claims were strong,

14   and could be pursued on a class action basis, the Court certified only the wage claims.  Dkt. 65.

15   The declaration of Eileen B. Goldsmith in support of preliminary approval discusses in detail the

16   potential challenges faced by plaintiffs in obtaining classwide relief on the merits of the wage and

17   tools claims.  Dkt. 72-1 ¶27.

18       Although plaintiffs believe they have a strong case on the merits of the wage claims,

19   particularly following the published Court of Appeal decision in *Gonzalez v. Downtown LA*

20   *Motors*, 215 Cal.App.4th 36 (2013), Pep Boys has disputed many issues of fact and law, and

21   contends that the pay plans at issue in this case are distinguishable from those held unlawful in

22   *Gonzalez*.  Dkt. 72-1 ¶27.d.  Moreover, plaintiffs face potential challenges of proof regarding the

23   amount of non-productive time worked by Class Members.  *Id.* ¶27.a.  There remain numerous

24   contested questions of fact and law with respect to the wage and derivative claims, particularly

25   with respect to liquidated damages and certain Labor Code penalties, as to which Plaintiffs' must

26   prove Pep Boys' state of mind.  *Id.*  ¶27.e.  Because this Court declined to certify the tools claim,

27   plaintiffs could not obtain classwide relief on that claim without first successfully appealing the

28

1  denial of certification and then prevailing on the merits.  Plaintiffs also face substantial challenges

2  of classwide proof on the tools claim.  Dkt. 72-1 ¶27.c.  In light of these challenges to obtaining

3  classwide relief, Class Counsel determined that settlement was highly beneficial to the Class.

4       In addition to these considerations creating litigation risk, plaintiffs face further risk to

5  obtaining a classwide recovery due to the rapidly evolving law applicable to the minimum wage

6  and rest break claims.  Plaintiffs premised the minimum wage claims on the California Court of

7  Appeal's published decision in *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314 (2005), holding that

8  an employer must pay its employees no less than the minimum wage for each hour worked (rather

9  than, as federal law permits, determining whether the employer has complied with minimum wage

10  obligations by averaging all compensation earned by the employee over all hours worked).  At the

11  time that plaintiffs filed the original complaint, no published California Court of Appeal decision

12  addressed *Armenta*'s application to piece rate workers like the auto mechanics and ESTs in this

13  case, and *Gonzalez v. Downtown LA Motors*, a case that squarely presented that question, was

14  pending in the Court of Appeal.  Dkt. 72-1 ¶8.  As discussed in plaintiffs' Motion for Attorneys'

15  Fees and Expenses filed today, plaintiffs' counsel filed an amicus brief in *Gonzalez* in an effort to

16  protect the interests of the putative class here, and the Court of Appeal eventually issued a

17  published opinion in *Gonzalez* on April 2, 2013 – several months into this litigation – applying

18  *Armenta*'s holding to piece rate auto mechanics.  While *Gonzalez* significantly strengthened

19  plaintiffs' minimum wage claims (especially after the California Supreme Court denied review),

20  another Court of Appeal might reach a contrary result thereby triggering renewed attention in the

21  Supreme Court.  Cervantez Decl. ¶18.  Similarly, Plaintiffs' rest break claim is largely dependent

22  on the Court of Appeal's published decision in *Bluford*.  Although the California Supreme Court

23  denied review of *Bluford* as well, another Court of Appeal might reach a conflicting result.  *Id.* ¶19.

24       Also, there is considerable risk that plaintiffs would not be able to maintain class action

25  status through trial.  Even after the Court certified plaintiffs' minimum wage and derivative claims

26  as a class action, Pep Boys contended it still had grounds to move to decertify those claims before

27  trial.  Moreover, the Court declined to certify the tools claims.  To obtain classwide relief on those

28  claims, plaintiffs would have to wait until the final resolution of the minimum wage claims in this

1   Court, then appeal the denial of certification of the tools claims – and only if plaintiffs then

2   prevailed on appeal could they pursue the tools claims on a class basis.  Therefore, the likelihood at

3   this point of obtaining classwide relief on the tools claim is low.  The chance that plaintiffs might

4   not be able to obtain any classwide relief underscores the benefits to the Class of the Settlement.

5           The Settlement's structure is designed to account for this assessment of the relative

6   strengths of plaintiffs' various claims and the likelihood of obtaining classwide relief on the merits

7   as against the risk of losing on the merits.  The tools claims are discounted heavily to account for

8   the high litigation risk, the likelihood of extended delay in obtaining any relief, and challenges of

9   proof even if plaintiffs could prevail on appeal from the denial of class certification.  The minimum

10  wage claims are less heavily discounted, to account for the strength of those claims in the wake of

11  *Gonzalez*.  Nevertheless, a significant discount was appropriate to reflect challenges of proof, and

12  many unresolved questions of law that could impact the size of the overall recovery.

13          The timing of the settlement is also highly beneficial to Class Members. If the case is not

14  settled now, it will almost certainly be some years before Class Members obtain any relief, during

15  which time more Class Members may move and not be located later to receive their share.

16          Given the risks presented by this litigation, including the risk of outright loss on liability or

17  damages and the risk of appealing the denial of certification of the tools claim, and the likelihood

18  of extensive further delays if active litigation continues, the Settlement is fundamentally fair and is

19  in the best interest of the Class.

20          **B.       The Extent of Discovery and the Stage of the Proceedings Show That Class
21                      Counsel Was Fully Informed of the Strengths and Weaknesses of the Case and
                        the Relative Benefits of the Settlement.**

22          "A settlement following sufficient discovery and genuine arms-length negotiation is

23  presumed fair."  *Vasquez*, 266 F.R.D. at 489.  The extent of discovery and investigation here

24  enabled Class Counsel to develop an informed view of the strengths and weaknesses of the case.

25  The parties engaged in extensive discovery regarding Pep Boys' relevant policies and practices, as

26  set forth *supra* at 2-3.  The decision to settle was informed not only by the extent of discovery and

27  investigation, but also by this Court's ruling on class certification and the parties' exchange of

28

1  information before and after their July 24, 2013 mediation.  Class Counsel's extensive and

2  thorough investigation of the strengths and weaknesses of plaintiffs' claims and the range of

3  potential recoveries, and the advanced stage of the litigation weigh strongly in favor of settlement.

**C.      The $3.6 Million Non-Reversionary Settlement Amount is Fair and Reasonable.**

6       The $3.6 million offered in settlement is substantial, and fair and adequate to the class.  As

7  discussed in plaintiffs' motion for preliminary approval, the allocation of the gross settlement fund

8  – including the amounts earmarked for the LWDA payment, class representative service payments,

9  administrative costs, and attorneys' fees and expenses – is reasonable.  Dkt. 72 at 5-8 and 10-14.

10  Assuming the Court approves the requested class representative service payments, attorneys' fees

11  and costs, administrative costs, and $5,000 payment to the LWDA, approximately $2,348,500 will

12  be available for settlement payments to Class Members.  That entire amount will be distributed to

13  as many of the 1,490 Class Members as can be located during the notice process and who have not

14  opted out.  Settlement ¶V.8.3(b).  For purposes of rough calculation, this would result in an

15  *average* payment of $1,576.17 to each of the 1,490 Class Members.  However, as discussed above,

16  the payments are weighted based on subclass membership and are individually calculated based on

17  eligible workweeks when each Class Member worked in a covered position.  Settlement ¶¶V.8.2 &

18  V.8.3(a).

19       Given the substantial risks of continuing with the litigation, the overall amount offered, and

20  in particular the amount available for Class Member settlement payments, is reasonable.  Although

21  plaintiffs estimated Pep Boys' maximum exposure on the minimum wage and related claims,

22  including penalties and interest, at approximately $20 million, Pep Boys' estimated exposure

23  numbers at mediation were considerably lower.  Dkt. 72 at 10-11.  Moreover, even though the

24  Court certified the wage claims as a class action, there is substantial risk that plaintiffs might not

25  prevail on the merits, or that even if they prevailed, they might be unable to prove an entitlement to

26  liquidated damages or other Labor Code penalties that require rulings on Pep Boys' state of mind.

27  *See* Labor Code §§203, 1194.2; Dkt. 72 at 11.  Because the Court declined to certify the tools claim

28  as a class action, the likelihood of a classwide recovery on that claim is quite remote absent

1  settlement, requiring plaintiffs to successfully appeal the denial of certification and then prevail on

2  the merits on remand.  Dkt. 72 at 11.  For these reasons, the $3.6 million offered in settlement is an

3  excellent result that will bring substantial benefits to the Class.

**D.  The Experience and Views of Class Counsel Strongly Support Approval.**

5  "Great weight is accorded to the recommendation of counsel, who are most closely

6  acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm.,* 221 F.R.D. at 528.

7  "The fact that experienced counsel involved in the case approved the settlement after hard-fought

8  negotiations is entitled to considerable weight."  *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15,

9  18 (N.D. Cal. 1980).  The Settlement has the strong support of Class Counsel, whose views are

10  informed by their extensive experience.  As set forth in the declarations of Eve Cervantez and Matt

11  Matern, Class Counsel are highly experienced class action lawyers who are well positioned to

12  assess the risks of continued litigation and the benefits obtained by the Settlement.  Cervantez

13  Decl. ¶¶24-30; Dkt. 39 ¶¶3-13, Dkt. 72-4 ¶3.  As described above, substantial investigation,

14  discovery, and litigation over the past three years has enabled Class Counsel to fully assess the

15  strengths and weaknesses of the case.  Class Counsel believe that the Settlement is an excellent

16  result that is in the best interest of Class Members in light of all of the known facts and

17  circumstances, including the Court's class certification ruling, the risks of obtaining classwide

18  relief on the merits, and the likelihood of further significant delay attendant to resuming active

19  litigation.  Dkt. 72-1 ¶¶23-28, Dkt. 72-4 ¶3.

**E.  Class Members Uniformly Support the Settlement.**

21  At the time of this filing, no Class Members had opted out or objected to the Settlement.

22  The named plaintiffs also strongly support the Settlement.  Dkt. 72-5 ¶5, 72-6 ¶5, 72-7 ¶5.  The

23  Class Members' evident support of the Settlement weighs in favor of approval.  Plaintiffs will

24  address any further Class Member responses to the Settlement received after the date of this filing

25  in their reply brief to be filed on December 22, 2014.

**F.  The *Bluetooth* Factors Also Support Approval of the Settlement.**

27  In *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), the Ninth

28  Circuit identified additional factors that a court should consider in evaluating a class action

1  settlement that is entered into before a class is certified, to protect against collusion.  *Id.* at 946

2  (where a settlement agreement is "negotiated prior to formal class certification, consideration of

3  [the] *Churchill* factors alone is not enough to survive appellate review").  Although no *Bluetooth* is

4  required here because this Settlement was reached after this Court certified the minimum wage and

5  derivative claims, the Settlement nevertheless satisfies the *Bluetooth* analysis as well.

6      Class Counsel will not recover their fees "separate and apart from class funds," *Bluetooth*,

7  654 F.3d at 947, but will only recover fees if the amount of the settlement fund is approved by the

8  Court as fair and adequate.  Settlement ¶¶V.2.1, V.10.1.  Any amounts allocated by the settlement

9  to fees that the Court declines to award will not revert to Pep Boys, as the *Bluetooth* court found

10 might signal collusion (654 F.3d at 947), but instead will be added to the amount of the settlement

11 fund that is distributed to Class Members.  Settlement ¶V.10.2.  Finally, Class Counsel is not

12 receiving "a disproportionate distribution of the settlement" as compared to that received by Class

13 Members.  654 F.3d at 947.  Class Counsel are requesting a fee award of 30% of the Settlement

14 Fund, or $1,080,000.  As discussed in detail in plaintiffs' Motion for Attorneys' Fees and

15 Expenses, this amount is less than Class Counsel's lodestar, is fully justified by the risks of the

16 litigation and the results obtained, and is well in line with fee awards in comparable cases.

17 Meanwhile, as discussed above, the 1,490 Class Members will receive individual distributions

18 from the estimated net settlement fund of approximately $2,348,500.  All Class Members who can

19 be located will receive substantial, individually calculated payments.  Class Members will be

20 mailed their payments automatically, and need not go through a claims process.  Thus, the lion's

21 share of the $3.6 million settlement fund will go directly to the Class.

22      **G.    The Requested Service Payments are Reasonable.**

23      The Settlement Agreement provides for class representative service payments of $10,000

24 each for plaintiffs Tokoshima and Faber, and $7,500 for plaintiff Flores (who was not deposed).

25 These amounts are reasonable and should be approved.

26      Enhancement payments for class representatives are "fairly typical in class action cases,"

27 and "are intended to compensate class representatives for work done on behalf of the class, to make

28 up for financial or reputational risk undertaken in bringing the action and, sometimes, to recognize

their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).  Here, the three named plaintiffs were active participants in this litigation.  Plaintiff Tokoshima spent at least 69 hours in direct work pertaining to this case, including extensive meetings and interviews with Class Counsel both before and after the case was filed to assist with counsel's investigation of plaintiffs' claims, gathering documents to aid in counsel's fact development, responding to written discovery, preparing for his deposition and being deposed, and personally attending the July 2013 mediation.  Dkt. 72-5 ¶2.  Plaintiff Faber spent at least 59 hours in direct work on the case, including meetings and interviews with Class Counsel for fact development, responding to written discovery, and preparing for his deposition and being deposed.  Dkt. 72-7 ¶2.  Plaintiff Flores spent at least 37 hours on the case, including interviews and meetings with Class Counsel for investigation and fact development, and responding to written discovery.  Although defendants ultimately decided not to depose Mr. Flores, they noticed his deposition and he was ready to be deposed.  Dkt. 72-6 ¶2.  Each of the named plaintiffs undertook financial and reputational risk in this litigation, including the risk of not being able to find other work in the automotive repair industry and the risk of having to pay Pep Boys' litigation costs. Dkt. 72-5 ¶3, 72-6 ¶3, 72-7 ¶3.  Moreover, whereas Class Members are releasing claims only with respect to claims alleged in the Second Amended Complaint (Settlement ¶V.1.38), the class representatives are giving Pep Boys broader general releases with respect to all claims they may have against Pep Boys.  Settlement ¶V.1.14.

The amounts requested are reasonable, both in comparison to the overall settlement fund and in comparison to individual Class Member recoveries.  *See Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003).  The total $27,500 value of the three class representative enhancements amounts to just 0.7% of the total $3.6 million settlement fund.  Also, as discussed *supra* at 5-6, Class Member recoveries are currently estimated at approximately $2,245 *per year* worked for Mechanic Subclass members and $1,122 *per year* worked for Base Pay Subclass members. Moreover, the amounts requested are consistent with enhancement awards that district courts in California have typically approved in recent cases.  *See, e.g.*, *Ramirez v. Ghilotti Bros. Inc.*, Case No. C 12-04590 CRB, 2014 WL 1607448 at *2 (N.D. Cal. Apr. 21, 2014) (approving service

1 payments of $15,000 each to three class representatives from $950,000 settlement fund); *Greene v.*

2 *Gino Morena Enters. Inc.*, 2014 WL 5606442 at *3 (C.D. Cal. Nov. 4, 2014) (approving two

3 $10,000 service payments from $575,000 settlement fund); *Ontiveros v. Zamora*, 2014 WL

4 5035935 at *6 (E.D. Cal. Oct. 8, 2014) (approving $15,000 service payment from $2 million

5 settlement fund in minimum wage class action); *Boring v. Bed Bath & Beyond*, Case No. C 12-

6 05259 JST, 2014 WL 2967474 at *3 (N.D. Cal. June 30, 2014) (approving $7,500 service payment

7 from $415,000 settlement fund); *Ross v. U.S. Bank NA*, Case C 07-02951 SI, 2010 WL 3833922 at

8 *2 (N.D. Cal. Sept. 29, 2010) (approving four $20,000 service payments from $3.5 million

9 settlement fund); *Bond v. Ferguson Enters., Inc.*, 2011 WL 2648879, at *2, 15 (E.D. Cal. June 30,

10 2011) (approving two $11,250 incentive payments from $2.25 million settlement fund).  For these

11 reasons, the Court should approve the class representative service payments.

12 **V.      CONCLUSION**

13          For the reasons set forth above, Class Counsel respectfully request that the Court grant final

14 approval of the Settlement and approve the class representative service payments in the amounts

15 set forth above.

16

17 Dated: December 1, 2014                    By:      */s/ Eileen B. Goldsmith*
                                                      Eileen B. Goldsmith
18

19                                                    Eve H. Cervantez (SBN 164709)
                                                      Eileen B. Goldsmith (SBN 218029)
20                                                    ALTSHULER BERZON LLP
                                                      177 Post Street, Suite 300
21                                                    San Francisco, CA 94108
                                                      Tel. (415) 421-7151
22                                                    Fax (415) 362-8064
                                                      Email: ecervantez@altber.com
23

24

25                                                   Matthew J. Matern (SBN 159798)
                                                      Dalia Khalili (SBN 253840)
26                                                   RASTEGAR & MATERN,
                                                      ATTORNEYS AT LAW APC
27                                                   1010 Crenshaw Boulevard, Suite 100
                                                      Torrance, CA 90501
28                                                   Tel. (310) 218-5500

Fax (310) 218-1155
Email: mjm@rastegar-matern.com


Class Counsel